IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| REGINA TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-CV-00217-DGK |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This case arises from a fatal collision involving a motorcycle and a United States Postal Service ("USPS") truck in Clay County, Missouri. Plaintiff Regina Tucker brought survival and wrongful death claims against the USPS, the truck driver Matthew Weitharn, and the Missouri Highways and Transportation Commission.[1]

Now before the Court is Defendant's motion to dismiss Plaintiff's claims under the Federal Tort Claims Act ("FTCA") for lack of subject matter jurisdiction. ECF No. 40. Defendant's motion, in part, contends there is conflicting evidence concerning whether Plaintiff and Lonnell Tucker ("Decedent") were married on April 2, 2021. Plaintiff contends they were married three days before the accident. Whether a marriage ceremony occurred goes to this Court's subject matter jurisdiction because if they were not married, Plaintiff would not be able to bring a wrongful death claim under Missouri's wrongful death statute or the FTCA. To resolve the jurisdictional question, Defendant requested an evidentiary hearing.

---

[1] The Court previously substituted the Unites States of America as the real party in interest for the USPS and Matthew Weitharn and dismissed the Missouri Highways and Transportation Commission on sovereign immunity grounds. ECF Nos. 12, 26.

On May 14, 2024, the Court held an evidentiary hearing concerning Plaintiff's marital status at the time of Decedent's death. After carefully considering the evidence adduced at the hearing, the Court finds there is insufficient evidence to support Plaintiff's claimed matrimony and GRANTS Defendant's motion to dismiss.

**Findings of Fact**

The Court finds that all the witnesses were generally credible, with a few exceptions. The Court gave the testimony Ernest Hall little weight. His testimony largely recanted prior statements made to Department of Justice investigators that he did not witness a wedding, with his refreshed memory claiming he did witness a wedding coming from conversations with his wife and Plaintiff's counsel. Although Ernest did not testify in person, the Court was able to observe his demeanor during his videotaped deposition. At times his demeanor while testifying suggested he was not being truthful. In addition, his testimony was inconsistent with more credible evidence. The Court also gave little weight to portions of Regina McBeth and Turri Hall's testimony because it was inconsistent with more credible evidence. Lastly, the Court gave little weight to Plaintiff's testimony concerning whether she told anyone about the alleged marriage because it was inconsistent with more credible evidence.

The Court finds the relevant facts to be as follows:

Plaintiff and Decedent began dating during high school in 2007. They lived together from March of 2012 until Decedent's death in April of 2021. In March of 2019, they moved from their duplex in Kansas to a home located at 5018 North Fremont Avenue in Kansas City, Missouri. The 5018 North Fremont property was originally titled in Decedent's name. In October of 2019, Decedent executed a quitclaim deed adding Plaintiff to the title. Plaintiff still lives at this address with their two daughters.

Plaintiff and Decedent got engaged sometime in January of 2021. This was the third time Decedent had proposed, but the first time Plaintiff said yes. After getting engaged, Plaintiff and Decedent shopped for engagement rings. Plaintiff selected two ring options, with the final decision being left to Decedent. No engagement ring was purchased before Decedent passed away.

On February 2, 2021, Plaintiff and Decedent were issued a Kansas marriage license. Plaintiff contends they were married two months later on April 2, 2021, in her sister's house on the spur of the moment.[2]

There are no photos, videos, social media posts, or announcement of the alleged April 2, 2021, marriage ceremony. Neither Plaintiff and Decedent's then 9-year-old daughter nor any member of Decedent's family were present for the alleged ceremony. Between April 2, 2021, and April 5, 2021, Decedent talked with his mother Michelle Avery Bey and brother Lewis Tucker, III on several occasions but did not tell them he had gotten married.

On April 5, 2021, Decedent was involved in a fatal collision with a USPS truck. Plaintiff retained counsel several days later and submitted a preservation letter to USPS on April 14, 2021. The letter stated that an administrative tort claim would be filed after receipt of Decedent's death certificate.

Decedent's funeral was held on April 17, 2021. Michelle served as next of kin and coordinated the funeral arrangements. Although Plaintiff was included in this planning, she did

---

[2] Based on the testimony of Plaintiff, her mother Regina McBeth, and her sister Turri Hall, the following account represents the alleged events of April 2, 2021. Plaintiff and Decedent arrived at Turri's house after dropping their oldest daughter at an activity nearby. Plaintiff's mother Regina and stepfather Cleveland McBeth arrived at the house sometime after 5:00 PM. The only other people at the house were Turri, her husband Ernest Hall, and Plaintiff's youngest daughter. While the group sat around talking, the topic of marriage came up, and Plaintiff and Decedent decided to get married then and there. No one was dressed up and there were no decorations. The ceremony was officiated by Cleveland and witnessed by Ernest and Turri. The ceremony lasted ten to fifteen minutes, included a scripture reading, exchanging of vows, a few words of encouragement from Cleveland, and a kiss. There was a celebration afterwards that lasted roughly thirty minutes before Plaintiff and Decedent had to leave to pick up their daughter from her activity.

not tell anyone she and Decedent had been married on April 2, 2021. Instead, Plaintiff held herself out to be Decedent's fiancé rather than his spouse.[3]

Decedent's death certificate was issued on April 26, 2021. The death certificate indicated Decedent was never married.

On July 6, 2021, Plaintiff and Decedent's marriage license was returned to the District Court of Wyandotte County, Kansas, indicating they had been married on April 2, 2021. A Certificate of Marriage reflecting the same was issued by the Kansas Office of Vital Statistics on July 27, 2021.

On July 30, 2021, Plaintiff's counsel recorded the quitclaim deed for the 5018 North Fremont property (which was executed in October of 2019) in Clay County, Missouri.

On March 4, 2022, Plaintiff filed the administrative tort claim with the USPS. The claim was denied in a letter dated October 25, 2022.

On March 28, 2023, the Circuit Court of Clay County, Missouri appointed Plaintiff as the Administrator of Decedent's estate. Plaintiff filed this case several days later on April 3, 2023.

After filing suit in federal court, several documents were amended. On September 21, 2023, Decedent's death certificate was amended to indicate he was married to Plaintiff at the time of his death. The death certificate was amended by affidavit. Plaintiff did not sign or submit the affidavit. Instead, it appears the process was handled by counsel without Plaintiff's knowledge.

Similarly, in September of 2023, Decedent's 2021 tax return was amended. Plaintiff

---

[3] On this point, there was conflicting hearing testimony. The Court finds the facts to be as follows. As part of the funeral arrangements, Michelle worked with one of Plaintiff's cousins to design and print the funeral program. The program included several memorial tributes written by family and loved ones as well as a section titled "Loving Memorial Reflections." Plaintiff and Michelle disagreed over whether the Loving Memorial Reflections section should refer to Plaintiff as Decedent's fiancé or as his daughter's loving mother. Ultimately, two versions of the program were handed out at Decedent's funeral. One version was handed out only to Michelle and her family and referred to Plaintiff as the daughter's loving mother. The other version referred to Plaintiff as Decedent's fiancé. In both versions of the program, the memorial tribute Plaintiff wrote stated she was Decedent's fiancé.

testified she was unaware the amended filing occurred. Plaintiff filed Decedent's original 2021 tax return after his death. Although the Court does not have a copy of Decedent's original 2021 tax return, the unrebutted implication is that the filing status was amended from "Single" to "Married filed jointly."

Michelle and Lewis became aware of the alleged marriage between Plaintiff and Decedent for the first time in January of 2024 after being contacted by the United States' Attorney's office in connection with this case.

**Standard**

Federal courts are courts of limited jurisdiction and may only hear cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a complaint if it lacks subject matter jurisdiction to hear a dispute. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). When jurisdiction is challenged under Rule 12(b)(1), district courts "may look outside the pleadings to determine the threshold question of jurisdiction." *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013).

In general, "[a]district court lacks jurisdiction to hear a case against the United States unless its sovereign immunity has been waived." *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003). "The FTCA is a limited waiver of the United States' sovereign immunity," and a district court has subject matter jurisdiction over FTCA claims only if they have been administratively exhausted. *Rollo-Carlson v. United States*, 971 F.3d 768, 770 (8th Cir. 2020) (citing 28 U.S.C. § 2675(a)). Administrative exhaustion requires a plaintiff to "first present[] the claim to the appropriate Federal agency" along with "evidence of a personal representative's authority to act on behalf of a claim's beneficiaries." *Rollo-Carlson*, 971 F.3d at 770; *Mader v. United States*, 654 F.3d 794, 801 (8th Cir. 2011) (en banc). State law governs who has authority

5

to present a wrongful death claim to the appropriate federal agency. *Mader*, 654 F.3d at 808 (citation omitted). Thus, without the authority to present a tort claim at the administrative stage, the FTCA's presentment requirement is not satisfied, the claim is not exhausted, and Unites States' sovereign immunity is not waived. *See Rollo-Carlson*, 971 F.3d at 770 ("The presentment requirement is a jurisdictional prerequisite to filing an FTCA action in federal court."). The party invoking the Court's subject matter jurisdiction has the burden to prove it has satisfied these jurisdictional requirements. *See V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).

## Discussion

Defendant argues the Court lacks subject matter jurisdiction over Plaintiff's survival and wrongful death claims because she did not exhaust her administrative remedies before filing suit in federal court. Specifically, Defendant argues: (1) Plaintiff's survival action should be dismissed because she was not the personal representative of Decedent's estate when the claim was presented to the USPS; and (2) Plaintiff's wrongful death claim should be dismissed because she was not Decedent's spouse at the time of his death.

As an initial matter, it is unclear the exact claims Plaintiff asserts. Plaintiff's complaint states she is bringing a survival claim on behalf of Decedent's estate under Mo. Rev. Stat. § 537.020, and a wrongful death claim under Mo. Rev. Stat. § 537.080. *See* Compl. ¶¶ 1–2, ECF No. 1. Each count in Plaintiff's complaint is styled as "Wrongful Death and Survival" but does not delineate between the two statutory bases. *See generally* Compl. at 5–11. Defendant's motion to dismiss addresses Plaintiff's survival and wrongful death claims as being two distinct causes of action. Plaintiff's opposition discusses only her wrongful death claim.

For purposes of thoroughness, the Court discusses both causes of action.

6

I.  **Plaintiff did not have authority to present Decedent's survival claim to the USPS under Mo. Rev. Stat. § 537.020.**

Defendant argues Plaintiff's survival claim should be dismissed because she was not the administrator of the Decedent's estate when the administrative tort claim was filed and therefore lacked authority to present Decedent's survival action to the USPS. Plaintiff does not respond to this argument.

Missouri's survival statute applies only to claims for "personal injuries, *other than those resulting in death.*" Mo. Rev. Stat. § 537.020 (emphasis added). These pre-existing claims survive only to the "personal representative" who is "appointed by the probate division of the circuit court." *See id.* § 537.020; *State ex rel. Cunningham v. Wiggins*, 156 S.W.3d 473, 476 (Mo. Ct. App. 2005). Only a decedent's personal representative has standing to bring a survival action. *Carter v. Pottenger*, 888 S.W.2d 710, 712 (Mo. Ct. App. 1994).

To the extent Plaintiff brought a survival action pursuant to § 537.020, it is dismissed for the following reasons. First, the personal injury claims Plaintiff pursues are foreclosed by § 537.020 because they did not pre-exist the injuries resulting in Decedent's death. Second, Plaintiff was appointed the personal representative of Decedent's estate on March 28, 2023, more than a year after presenting her administrative tort claim to the USPS. Thus, even if the personal injury claims pre-existed Decedent's death, Plaintiff lacked authority to present them to the USPS.

Accordingly, to the extent Plaintiff brought a survival action pursuant to § 537.020, that claim is dismissed.

II.  **Plaintiff did not have authority to present a wrongful death claim to the USPS under Mo. Rev. Stat. § 537.080.**

Next, Defendant argues Plaintiff's wrongful death claim should be dismissed because she was not married to Decedent at the time of his death and therefore lacked authority to present the wrongful death claim to the USPS.

In Missouri, a wrongful death claim vests in a decedent's surviving family members and permits them to seek damages suffered as a result their death. Mo. Rev. Stat. §§ 537.080–85; *Lawrence*, 273 S.W.3d at 527. Only specified statutory beneficiaries, including a decedent's surviving spouse, have authority to bring a wrongful death claim. Mo. Rev. Stat. § 537.080.

Plaintiff argues she had authority to present the wrongful death claim as Decedent's surviving spouse because they were married three days before his death on April 2, 2021. Plaintiff bears the burden of establishing jurisdiction. That is, Plaintiff must present sufficient evidence that a marriage ceremony occurred.[4]

While the Court found portions of Plaintiff's testimony credible, the Court finds there is insufficient evidence to support the alleged April 2, 2021, marriage. Neither Plaintiff and Decedent's oldest daughter nor any member of Decedent's family were present for the alleged ceremony. There are no photos or videos of the alleged ceremony despite the lack of immediate family present (including their oldest daughter). No social media posts or other announcements concerning the ceremony were ever made. No member of Decedent's family was told about the marriage by either Decedent before he passed away or by Plaintiff during the pendency of the funeral arrangements. During this time, Plaintiff held herself out as Decedent's fiancé rather than his spouse. Michelle and Lewis became aware of the alleged marriage in January of 2024—nearly three years later—after being contacted by the United States' Attorney's office in connection with this case.

---

[4] Federal courts may address issues related to domestic relations when they intersect with federal concerns. *See United States v. Windsor*, 570 U.S. 744, 765 (2013) (discussing federal "laws that regulate the meaning of marriage in order to further federal policy"); *see also* 8 U.S.C. § 1186a(b)(1)(A) (stating that a permanent resident's conditional status can be terminated if there is evidence of a sham marriage). In this case, the FTCA's narrow waiver of the United States' sovereign immunity is a federal concern. Accordingly, the Court's inquiry does not address whether Plaintiff's Kansas Certificate of Marriage is valid under Kansas law, but rather, whether there is sufficient evidence supporting the alleged April 2, 2021, marriage ceremony such that the United States' sovereign immunity is waived.

These facts, taken together, suggest a marriage ceremony on April 2, 2021, did not take place. Further, the timing of the alleged ceremony (three days before Decedent's death), the delay in returning the completed marriage license (three months after retaining counsel), and the post-hoc amendment of documents suggest an effort to construct a marital relationship where one did not exist. For example, Plaintiff filed Decedent's original 2021 tax return after his death (and therefore after the alleged marriage), yet the filing status was later amended from "Single" to "Married filed jointly" after this suit was initiated.

Accordingly, because Plaintiff lacked authority to present the wrongful death claim to the USPS as Decedent's surviving spouse, the wrongful death claim was not exhausted, and the Court lacks subject matter jurisdiction over it.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. This case is DISMISSED.

**IT IS SO ORDERED.**

Date: May 31, 2024

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT